IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>         Plaintiff,<br><br> – against –<br><br>ARTHUR FREYDIN, SARAH MCLOUGHLIN, BASIC CREATIVE, LLC and TANDEM MARKETING, INC.,<br><br>         Defendants. | **COMPLAINT** |

Plaintiff Jane Doe ("Plaintiff") by and through her counsel, Perrone Law PLLC, complaining of Defendants Arthur Freydin, Sarah McLoughlin, Basic Creative, LLC and Tandem Marketing, Inc. ("Defendants"), alleges as follows:

## NATURE OF ACTION

1. This action arises from yet another tragic tale of a New York couple – Defendants Arthur Freydin and Sarah McLoughlin – using their influence and money to commit unthinkable acts of depravity and sexual deviance at the expense of a young, trusting woman in desperate need of gainful employment – Plaintiff Jane Doe – who, as a condition of and in connection with her employment, was forced to reside 4- to 5-nights each week with Defendants Arthur Freydin and Sarah McLoughlin in their New York City apartment, which – unbeknownst to her – was outfitted with hidden spy cameras in both the bedroom and bathroom designated for her use.

2. To achieve their devious ends, Defendants Arthur Freydin and Sarah McLoughlin used the promise of employment with their jointly owned entities – Defendants Basic Creative, LLC and Tandem Marketing, Inc. – to isolate Plaintiff Jane Doe in their apartment, which required her to use a specially designated, unique access code to gain entry, so her every coming and going

could be tracked. While employed by Defendants Arthur Freydin and Sarah McLoughlin as an assistant with Defendants Basic Creative, LLC and Tandem Marketing, Inc., Plaintiff Jane Doe was sexually assaulted, harassed and surreptitiously recorded in the bedroom and bathroom.

## JURISDICTION

3. Jurisdiction and venue are proper in this Court.

4. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this lawsuit is between citizens of different States.

5. Venue is properly placed in the United States District Court for the Southern District of New York since the acts complained of took place here, Defendants Arthur Freydin and Sarah McLoughlin reside and do business here, Defendants Basic Creative, LLC and Tandem Marketing, Inc. each have their principal place of business here, and this is the most convenient place for the trial of this action.

## THE PARTIES

6. At all times hereinafter mentioned, Plaintiff Jane Doe ("Plaintiff") is a citizen of the State of New Jersey.

7. Plaintiff files this Complaint under a pseudonym in order to protect her identity because this Complaint makes allegations of a sensitive sexual nature and disclosure of her name publicly will cause further harm to her.

8. At all times hereinafter mentioned, Defendant Arthur Freydin ("Freydin") is a citizen of the State of New York.

9. At all times hereinafter mentioned, Freydin resides at 136 East 56th Street, Apartment 12F, New York, New York.

10. At all times hereinafter mentioned, the primary residence of Freydin is located at 136 East 56th Street, Apartment 12F, New York, New York.

11. At all times hereinafter mentioned, Plaintiff was employed by Freydin.

12. At all times hereinafter mentioned, Defendant Sarah McLoughlin ("McLoughlin") is a citizen of the State of New York.

13. At all times hereinafter mentioned, McLoughlin resides at 136 East 56th Street, Apartment 12F, New York, New York.

14. At all times hereinafter mentioned, the primary residence of McLoughlin is located at 136 East 56th Street, Apartment 12F, New York, New York.

15. At all times hereinafter mentioned, Plaintiff was employed by McLoughlin.

16. At all times hereinafter mentioned, upon information and belief, Defendant Basic Creative, LLC ("Basic Creative") is a domestic limited liability company, duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in New York, New York.[1]

17. At all times hereinafter mentioned, upon information and belief, Freydin is the Founder and Chief Executive Officer of Basic Creative.[2]

18. At all times hereinafter mentioned, upon information and belief, Freydin is a member of Basic Creative.

19. At all times hereinafter mentioned, upon information and belief, Freydin controlled, directed or supervised the business of Basic Creative.

---

[1] https://web.archive.org/web/20210118231814/https://www.basiccreative.co/ (last visited October 7, 2021) (identifying New York, New York as the location of Basic Creative, LLC, and Arthur Freydin as its "Founder"); https://www.linkedin.com/in/arthurfreydin/ (last visited October 7, 2021) (identifying the location of Basic Creative, LLC and Tandem Marketing, Inc. as the "Greater New York City Area").
[2] https://web.archive.org/web/20210118231814/https://www.basiccreative.co/ (last visited October 7, 2021) (identifying Arthur Freydin as the "Founder" of Basic Creative, LLC).

20. At all times hereinafter mentioned, upon information and belief, Freydin is doing business as "BASIC creative, LLC."

21. At all times hereinafter mentioned, upon information and belief, McLoughlin is a member of Basic Creative.

22. At all times hereinafter mentioned, upon information and belief, McLoughlin controlled, directed or supervised the business of Basic Creative.

23. At all times hereinafter mentioned, upon information and belief, McLoughlin is an employee of Basic Creative.

24. At all times hereinafter mentioned, upon information and belief, McLoughlin is doing business as "BASIC creative, LLC."

25. At all times hereinafter mentioned, Plaintiff was employed by Basic Creative, LLC.

26. At all times hereinafter mentioned, upon information and belief, Defendant Tandem Marketing, Inc. ("Tandem Marketing") is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York, with its principal place of business in New York, New York.[3]

27. At all times hereinafter mentioned, upon information and belief, Tandem Marketing is also known as Basic Creative, as evidenced by the interchangeable use of those names by Freydin on his LinkedIn, the relevant portion of which is depicted below:

---

[3] https://www.tandemmktg.com (last visited October 7, 2021) (identifying New York, New York as the location of Tandem).



> Owner
> **Tandem Marketing** Full-time
> Mar 2018 – Present · 3 yrs 8 mos
> Greater New York City Area
>
> **BASIC creative** is a boutique marketing agency specializing in Social Media Advertising and Growth Consulting for ecommerce businesses. We take on clients as projects that start out with ad spend as low as $3,000 /mo, and help them scale up to and over $100,000 /mo through efficient audience testing, creative development and holistic business support through rapid growth strategy & execution support.

https://www.linkedin.com/in/arthurfreydin/ (last visited October 7, 2021) (last visited October 7, 2021) (orange outlining added).

28. At all times hereinafter mentioned, upon information and belief, Basic Creative is doing business as Tandem Marketing.

29. At all times hereinafter mentioned, upon information and belief, Freydin is the Founder and Chief Executive Officer of Tandem Marketing.

30. At all times hereinafter mentioned, upon information and belief, Freydin is a shareholder of Tandem Marketing.

31. At all times hereinafter mentioned, upon information and belief, Freydin controlled, directed or supervised the business of Tandem Marketing.

32. At all times hereinafter mentioned, upon information and belief, Freydin is doing business as Tandem Marketing.

33. At all times hereinafter mentioned, upon information and belief, McLoughlin is a shareholder of Tandem Marketing.

34. At all times hereinafter mentioned, upon information and belief, McLoughlin controlled, directed or supervised the business of Tandem Marketing.

35. At all times hereinafter mentioned, upon information and belief, McLoughlin is an employee of Tandem Marketing.

36. At all times hereinafter mentioned, upon information and belief, McLoughlin is doing business as Tandem Marketing.

37. At all times hereinafter mentioned, Plaintiff was employed by Tandem Marketing, Inc.

## FACTUAL BACKGROUND

38. Freydin and McLoughlin used the promise of gainful employment and housing to lure Plaintiff – a recent college graduate in desperate need of employment – away and isolate her from her family for the purpose and with the intent of committing and subjecting Plaintiff to illegal sex crimes in violation of New York law. While Plaintiff was employed by Basic Creative and Tandem Marketing, both of which are controlled and owned by Freydin and McLoughlin, she was sexually assaulted, sexually harassed and surreptitiously recorded in various stages of undress in the bathroom, bedroom and other places by Freydin and McLoughlin.

39. Plaintiff began her employment with McLoughlin in February 2021 as a babysitter for her children 2-days a week. This babysitting work was performed by Plaintiff in Cranbury, New Jersey, at the residence of McLoughlin's mother. McLoughlin subsequently solicited further employment of Plaintiff as an assistant for her husband, Freydin, in connection with the business of Basic Creative and/or Tandem Marketing in New York, New York. Plaintiff began working for Freydin and McLoughlin as an employee of Basic Creative and/or Tandem Marketing towards the end of March 2021.

40. When Plaintiff first began her employment with Freydin and McLoughlin as an employee of Basic Creative and/or Tandem Marketing, she was required to work 3-days a week at their private residence located at 136 East 56th Street, Apartment 12F, New York, New York. She was subsequently required to stay in the aforementioned private residence 4- to 5-nights a week in connection with and as a condition of her employment, and began doing so on or about August 28, 2021. To this end, Freydin picked-up Plaintiff from her residence in New Jersey and trafficked her each week to the apartment in which he resides with McLoughlin.

41. The atmosphere in which Plaintiff was required to work was both controlling and sexually charged with harassment ranging from sexually charged comments to unwanted, sexual touching. For example, on or about August 20, 2021, Freydin required Plaintiff to be photographed to demonstrate the application of Tape Geeks Kinesiology Tape, one of the products Basic Creative and/or Tandem Marketing was marketing. The photographs were meant to demonstrate application of the kinesiology tape on the knee, elbow and shoulder only, as evidenced by the below message sent by Freydin:



Arthur  8:46 AM
1. We dropped budget down until we see positive results
2. @Emily Iovine and I will shoot UGC, showing the application of tape on:
   a. Knee (runner's knee)
   b. Elbow (tennis elbow)
   c. Shoulder (shoulder pain)
3. They are working on further website revisions
   d. Subscription option
   e. Changes to their pop-up (removing name field)

A true and correct copy of the above message is annexed hereto as Exhibit A.

42. Following the photographs taken on August 20, 2021, Freydin required Plaintiff to submit to additional photographs demonstrating application of the kinesiology tape. This second session of photographs occurred towards the end of August 2021 in the offices of Basic Creative and/or Tandem Marketing located at 511 West 25th Street, New York, New York, at a time when Freydin and Plaintiff were alone in the office with no other persons present. Freydin told Plaintiff that he required photographs depicting application of the kinesiology tape on the neck/back, and required Plaintiff to undress to her bra in his closed-door office to obtain same.

43. After forcing Plaintiff to undress to her bra, Freydin applied the kinesiology tape to the neck and back of Plaintiff and, in the process of doing so, ran his hands along her exposed neck and back. Freydin then proceeded to take photographs and video recordings of Plaintiff in her bra on his cellular phone under the guise of depicting application of the kinesiology tape. Once Freydin finished photographing and videoing Plaintiff in her bra, he told Plaintiff that the photographs and video recordings he took were inappropriate and could not be used for the purpose he claimed they were needed or for which he forced Plaintiff to undress in front of him in the first place.

44. Freydin also forced Plaintiff to attend weekly dinners with him on Monday nights when his wife was out-of-town, and required her to attend his chiropractor appointments, after which he would relay comments to Plaintiff that had purportedly been made by the chiropractor about his "attractive assistant." Freydin also required Plaintiff to go to the gym with him at 6:00 a.m., and would follow her around the gym to watch her workout. When Plaintiff attempted to relocate to another section of the gym to escape Freydin, he would follow and stand behind her for the duration of her workout.

45. The level of control Freydin and McLoughlin exerted on Plaintiff permeated every aspect of her life. Plaintiff was assigned a unique access code to the apartment in which Freydin and McLoughlin required her to reside, so they could track her every coming and going during the week, pressured her to prematurely terminate her car lease, so they could further limit her freedom and ability to escape their hold on her, and informed her that they were going to proceed with plans to expand their apartment, so she could live with them full-time and take on added work-related responsibilities as part of her employment with Freydin and McLoughlin.

46. However, on or about September 19, 2021, Plaintiff discovered a video recording device in the bedroom in which she slept of the apartment of Freydin and McLoughlin. The light on the device indicating that it was actively recording her in the bedroom was turned on. Plaintiff unplugged the device that same day, and found it actively recording her in the bedroom the very next day. Plaintiff again unplugged the device and, on September 21, 2021, Freydin confronted Plaintiff and demanded to know why the device had been unplugged. Plaintiff told Freydin that she did not want it in her bedroom.

47. On September 29, 2021, Plaintiff was in the office of Basic Creative and/or Tandem Marketing located at 511 West 25th Street, New York, New York, and asked Freydin to use his phone to make work-related telephone calls since her phone was not working properly. Plaintiff found a spy camera application called LookCam on Freydin's phone, which had video footage of her captured from inside the bathroom she shared with Freydin and McLoughlin at their apartment located at 136 East 56th Street, Apartment 12F, New York, New York. The video footage was in his recently viewed history. Plaintiff never consented to any such recording.

48. Plaintiff immediately confronted McLoughlin at the aforesaid apartment and, after a search of the bathroom was performed by Plaintiff in the presence of McLoughlin, a hidden spy

camera disguised as a USB charger was found in the bathroom of the apartment. This was the only bathroom in the apartment, in which Plaintiff had been staying 4- to 5-nights a week since on or about August 28, 2021. During the 4- to 5-nights a week Plaintiff stayed in the apartment, she used the bathroom in which the spy camera was hidden daily to urinate, defecate, dress, undress and shower, among other things, and, thus, had been nude therein on multiple occasions.

49. McLoughlin then called Freydin to inform him that Plaintiff had discovered the hidden spy camera in the bathroom. Freydin subsequently admitted that the spy camera disguised as a USB charger in the bathroom was recording in a message sent to Plaintiff on September 29, 2021 at or about 8:00 p.m.:



**Arthur** 8:00 PM
I noticed an app this morning that I don't recognize (I download tons of apps and never open most of them) and didn't think anything of it. Then I tapped it later and was immediately sidetracked because the call I was on needed my attention and never went back to it. If I had paid attention and waited for it to open, I would have seen it before you. I can only imagine what you went through. I deleted the app right away after Sarah called out of panic that it's still recording and unfortunately do not know if it was still active or anything.

A true and correct copy of the above message is annexed hereto as Exhibit B (orange outlining added).

50. Freydin falsely accused his 10-year-old son, as did McLoughlin, for the installation of both the hidden spy camera disguised as a USB charger, and the LookCam application on his

phone on which his recently viewed history contained video recordings of Plaintiff captured from inside of the bathroom of the aforementioned apartment. Freydin falsely told Plaintiff that his ex-wife (Lisa) found similar hidden spy cameras in her home, and that they had "sorted things out with [their 10-year-old son]." Exhibit B ("I've already sorted things out with [my son] as has Lisa. He of course had no idea what he was doing and this is a serious lesson for him . . .").[4]

## FIRST CAUSE OF ACTION

51. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

52. Plaintiff is an employee of Defendants under New York Labor Law § 203-C.

53. Each Defendant is an employer of Plaintiff under New York Labor Law § 203-C.

54. Defendants, as employers of Plaintiff, caused a video recording to be made of Plaintiff, an employee, in the bathroom and bedroom of their residence, both of which were rooms designated by Defendants for Plaintiff to change her clothes.

55. The aforementioned video recording was not authorized by court order.

56. The violation of New York Labor Law § 203-C committed by each Defendant was unlawful and adversely affected the employment of Plaintiff.

57. As a direct and proximate cause of the unlawful conduct of Defendants in violation of New York Labor Law § 203-C, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, including, but not limited to: mental, emotional and psychological anguish, anxiety, distress, pain, suffering and torment; severe and permanent emotional distress; stress and anxiety; physical manifestations of mental, emotional and psychological distress; humiliation; problems sleeping and concentrating; low self-esteem, self-confidence and self-respect; loss of

---

[4] Name of 10-year-old son omitted to protect his privacy.

self-esteem, self-confidence and self-respect; feelings of worthlessness; feeling shameful and embarrassed; feeling alone and isolated; losing faith in authority figures; severe mental anguish and distress; emotional distress; strained familial and intimate relationships; depression; feeling confused and angry; anxiety; feeling dirty, used, and damaged; having traumatic flashbacks; post-traumatic stress disorder; feeling that her life was ruined; sadness; irritability; helpless feelings; crying; isolating from family and peer support; nervousness; racing thoughts; difficulty keeping eye contact; feeling annoyed; and Plaintiff has otherwise suffered mental, emotional and psychological anguish, distress, pain, suffering and torment that continues to this day.

58. Plaintiff has also suffered and continues to suffer economic damages as a direct and proximate cause of the unlawful conduct of Defendants in violation of New York Labor Law § 203-C. Plaintiff engaged in the protected activity of reporting to Defendants their own violation of New York Labor Law § 203-C, and reporting the aforementioned violation to the New York City Police Department. Defendants, as malefactors and recipients of the complaint concerning their own violations of New York Labor Law § 203-C, retaliated against Plaintiff by deleting her work email, removing her access to work-related channels, and terminating her employment. As a direct and proximate cause of the foregoing, Plaintiff lost gainful employment and, thus, suffered and will continue to suffer lost earnings in an amount not less than $55,000.00 per year.

59. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendants, including attorneys' fees and punitive damages.

## SECOND CAUSE OF ACTION

60. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

61. Plaintiff is an employee of Defendants under New York Labor Law § 215.

62. Each Defendant is an employer of Plaintiff under New York Labor Law § 215.

63. Plaintiff engaged in the protected activity of opposing and reporting to Defendants their own violation of New York Labor Law § 203-C.

64. Defendants, as malefactors and recipients of the aforesaid complaint, possessed actual knowledge that Plaintiff engaged in the protected activity of reporting to them their own violation of New York Labor Law § 203-C.

65. As a direct and proximate result of Plaintiff engaging in this protected activity, Defendants retaliated against Plaintiff by deleting her work email, removing her access to work-related channels, and terminating her employment.

66. As a direct and proximate cause of the unlawful conduct of Defendants in violation of New York Labor Law § 215, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, as described herein, as well as economic damages due to loss of gainful employment in an amount not less than $55,000.00 per year.

67. By reason of the foregoing, Plaintiff is entitled to recover all appropriate relief from Defendants, including, but not limited to, liquidated damages, costs and reasonable attorneys' fees, among other relief authorized by New York Labor Law § 215.

**THIRD CAUSE OF ACTION**

68. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

69. Plaintiff is an employee of Defendants under New York City Administrative Code § 8-107.

70. Each Defendant is an employer of Plaintiff under New York City Administrative Code § 8-107.

71. Defendants engaged in unlawful discriminatory practices under New York City Administrative Code § 8-107 by discriminating against her on the basis of gender in the terms, conditions and privileges of her employment, as described herein.

72. Defendants discriminated against Plaintiff on the basis of gender in the terms, conditions and privileges of her employment by, *inter alia*, causing a video recording to be made of her in the bathroom and bedroom of their residence, both of which were rooms designated by Defendants for Plaintiff to change her clothes, and forcing her to be photographed and videotaped in her bra as a condition of her employment.

73. Plaintiff engaged in the protected activity of opposing and reporting to Defendants their own violation of New York City Administrative Code § 8-107, reporting same to the New York City Police Department, and retaining an attorney to commence a civil action alleging the commission of an unlawful discriminatory practice.

74. As a direct and proximate result of Plaintiff engaging in this protected activity, Defendants retaliated against Plaintiff by deleting her work email, removing her access to work-related channels, and terminating her employment.

75. As a direct and proximate cause of Defendants' unlawful discriminatory practice in violation of New York City Administrative Code § 8-107, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, as described herein, as well as economic damages due to loss of gainful employment in an amount not less than $55,000.00 per year.

76. By reason of the foregoing, Plaintiff is entitled to recover all appropriate relief from Defendants, including, but not limited to, liquidated damages, costs and reasonable attorneys' fees, among other appropriate relief.

**FOURTH CAUSE OF ACTION**

77. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

78. Plaintiff is an employee of Defendants under New York Human Rights Law § 296.

79. Each Defendant is an employer of Plaintiff under New York Human Rights Law § 296.

80. Defendants engaged in unlawful discriminatory practices under New York Human Rights Law § 296 by, as described herein, discriminating against her on the basis of gender in the terms, conditions and privileges of her employment, and subjecting her to harassment because of her gender.

81. Defendants engaged in such discrimination on the basis and harassment because of gender by, *inter alia*, causing a video recording to be made of her in the bathroom and bedroom of their residence, both of which were rooms designated by Defendants for Plaintiff to change her clothes, forcing her to be recorded, in photographs and video recordings, in her bra as a condition of her employment, and making comments about her bra size.

82. Plaintiff engaged in the protected activity of opposing and reporting to Defendants their own violation of New York Human Rights Law § 296, reporting same to the New York City Police Department, and retaining an attorney to commence a civil action alleging the commission of an unlawful discriminatory practice.

83. As a direct and proximate result of Plaintiff engaging in this protected activity, Defendants retaliated against Plaintiff by deleting her work email, removing her access to work-related channels, and terminating her employment.

84. As a direct and proximate cause of Defendants' unlawful discriminatory practice in violation of New York Human Rights Law § 296, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, as described herein, as well as economic damages due to loss of gainful employment in an amount not less than $55,000.00 per year.

85. By reason of the foregoing, Plaintiff is entitled to recover all appropriate relief from Defendants, including, but not limited to, liquidated damages, costs and reasonable attorneys' fees, among other appropriate relief.

## FIFTH CAUSE OF ACTION

86. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

87. Defendants had a duty to provide Plaintiff with safe working conditions. Each Defendant breached that duty by failing to provide Plaintiff with safe working conditions, as a direct and proximate cause of which she was, as described herein, sexually assaulted, sexually harassed and unlawfully recorded in rooms designated by Defendants for Plaintiff to change her clothes. For example, as a condition of her employment, Plaintiff was forced to undress to her bra in an isolated room with only Freydin present, submit to unwanted touching by Freydin of intimate parts of her person as he applied kinesiology tape down her naked back to her buttocks, and be recorded in both photographs and video recordings in this stage of undress.

88. McLoughlin had asked Plaintiff questions about and commented on her bra size, as did Freydin, for no legitimate purpose while Plaintiff was working as their employee. McLoughlin was aware of and complicit in the sexual assault, sexual harassment and surreptitious recording of Plaintiff, as well as the attempts by Freydin to cover-up and destroy evidence of the unlawful sexual assault, sexual harassment and surreptitious recording of Plaintiff, all of which occurred

while Plaintiff was employed by Freydin and McLoughlin as an employee of Basic Creative and/or Tandem Marketing. Defendants forced Plaintiff to work in unsafe, sexually charged conditions, including in their apartment under surreptitious surveillance due the documented history of control issues plaguing Freydin.

89. As a direct and proximate cause of Defendants' failure to provide Plaintiff with safe working conditions, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, as described herein, as well as economic damages due to loss of gainful employment in an amount not less than $55,000.00 per year.

90. Defendants willfully and intentionally, with callous and reckless indifference to the safety of Plaintiff, engaged in a systemic pattern and practice of fostering sexual abuse and harassment of its female janitorial workers on the night shift, for which punitive damages are the appropriate remedy.

91. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendants, including punitive damages.

## **SIXTH CAUSE OF ACTION**

92. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

93. Defendants were reckless, careless and negligent in installing photographic and video recording devices in the bathroom and bedroom of their apartment; in capturing Plaintiff on photographic and video recording devices in the bathroom and bedroom of their apartment; in viewing photographic and video recordings of Plaintiff in the bathroom and bedroom of their apartment; in installing and using hidden camera applications, including, but not limited to, LookCam; in capturing and viewing images and video recordings of Plaintiff in various stages of

undress and naked without her consent, knowledge or permission; in disseminating and/or showing to other persons images and video recordings of Plaintiff in various stages of undress and naked without her consent, knowledge or permission; in destroying evidence of the images and video recordings of Plaintiff captured in the bathroom and bedroom of their apartment to, *inter alia*, obstruct an active police investigation; in designating the bathroom and bedroom of their apartment as rooms for Plaintiff to change her clothes when such rooms contained photographic and video recording devices; in failing to notify or warn Plaintiff of said recording devices; in requiring Plaintiff to undress to her bra to demonstrate application of Tape Geeks Kinesiology Tape; in recording photographs and videos of Plaintiff in her bra under the guise of demonstrating application of Tape Geeks Kinesiology Tape; in touching Plaintiff on her neck, back and other intimate parts of her person during application of Tape Geeks Kinesiology Tape; in making sexually charged comments and statements to Plaintiff; in requiring Plaintiff to attend intimate dinners on a weekly basis after working hours; in assigning Plaintiff a unique access code to the apartment in which Freydin and McLoughlin required her to reside, so they could track her every coming and going during the week; in pressuring Plaintiff to prematurely terminate her car lease, so they could further limit her freedom and ability to escape their hold on her; in violating applicable laws, rules and regulations, including, but not limited to, New York Labor Law § 203-C, New York Labor Law § 215, New York City Administrative Code § 8-107, New York Human Rights Law § 296, and Defendants were otherwise reckless, careless and negligent.

94. As a direct and proximate cause of Defendants' negligence, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, as described herein, as well as economic damages due to loss of gainful employment in an amount not less than $55,000.00 per year.

95. By reason of the foregoing, Defendants are jointly and severally liable.

96. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendants, including, but not limited to, punitive damages.

## SEVENTH CAUSE OF ACTION

97. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

98. The sexual assault, sexual harassment and surreptitious recording of Plaintiff in the bathroom and bedroom by Defendants was extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society. The conduct was undertaken with complete and knowing disregard of the severe emotional, mental and physical distress it was certain to cause and, in fact, did cause Plaintiff.

99. As a direct and proximate cause of Defendants' negligence, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, among other damages, harms and injuries specified herein. Defendants are liable to Plaintiff for the injuries she sustained by reason of the negligent infliction of emotion distress inflicted on Plaintiff.

100. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendants, including, but not limited to, punitive damages.

## EIGHTH CAUSE OF ACTION

101. Plaintiff hereby repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

102. The sexual assault, sexual harassment and surreptitious recording of Plaintiff in the bathroom and bedroom by Defendants was extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society. The

conduct was intentional and undertaken with complete, knowing disregard of the severe emotional, mental and physical distress it was certain to cause and, in fact, did cause Plaintiff.

103. As a direct and proximate cause of Defendants' negligence, Plaintiff suffered and continues to suffer mental, emotional and psychological injuries, among other damages, harms and injuries specified herein. Defendants are liable to Plaintiff for the injuries she sustained by reason of the negligent infliction of emotion distress inflicted on Plaintiff.

104. By reason of the foregoing, Plaintiff is entitled to recover all of her damages from Defendants, including, but not limited to, punitive damages.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

WHEREFORE, Plaintiff demand judgment against Defendants to recover all damages properly recoverable, together with interest, costs and, as appropriate, attorneys' fees.

    Respectfully Submitted,

*Daniel C. Perrone*
Daniel C. Perrone
**PERRONE LAW PLLC**
2136 Victory Boulevard
Staten Island, New York 10314
(646) 470-9244
dcp@theperronefirm.com